IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBIN GEORGE,<br><br>    Plaintiff,<br><br>v.<br><br>LEHIGH VALLEY HEALTH NETWORK<br>(MUHLENBERG HOSPITAL),<br><br>    Defendant. | CIVIL ACTION<br>NO. 12-2239 |

**MEMORANDUM**

**SCHMEHL, J.**                                                                                           **April 15, 2014**

The only claims remaining in this case after a prior ruling on a partial motion to dismiss are Plaintiff's claims for sex-based discriminatory discharge under Title VII and the PHRA. Defendant has moved for summary judgment, which the Court will grant because Plaintiff has not put forward evidence on which a jury could base a finding that his sex was either a contributing or a determinative factor in his termination.

Factual and Procedural Background

Plaintiff Robin George worked as a radiologic technologist for Defendant Lehigh Valley Health Network at the former Muhlenberg Hospital. He was one of three male radiology techs on day shift. Plaintiff's supervisor for the relevant period, Barbara Lachimia, gave him employment evaluations and also disciplined him on several occasions.

The reviews and discipline records also reveal Plaintiff had some difficulties with attitude and anger. In 2005, Plaintiff himself wrote in an evaluation document that asked

for his ideas to improve his performance: "Divorce? Give the kids up for adoption." That evaluation noted that Plaintiff did not achieve expectations for his ability to respond in a positive manner to corrective coaching or work well with his supervisor and coworkers. In 2006, other employees reported to Lachimia that Plaintiff had emotional outbursts and an escalating temper, in part related to an upcoming ban on smoking, which Plaintiff admitted concerned him. Plaintiff's 2007 and 2008 evaluations included comments by both Lachimia and Plaintiff himself regarding problems with demeanor, respect, and controlling emotions in the workplace.

In 2007, a coworker, clinical instructor Melissa Schuch, put a sign in a gender-neutral bathroom that said: "<u>Please</u> Lower Seat When Finished." Though Plaintiff disputes to some extent the characterization of his reaction, the sign upset him and he had a heated discussion with Schuch. Plaintiff said, "maybe I just need to not touch it, leave it there, and piss on the seat." Schuch responded, "well, fuck you too." In response to the sign, Plaintiff also wrote a note complaining of sexual harassment and stating, "I am not a violent person, therefore I thought it best to leave for the day as it is my only relief from this situation." As a result of the toilet seat sign incident, Plaintiff was assigned mandatory counseling through the Employee Assistance Program. Schuch apologized to Lachimia for her use of profanity. Later in 2007, Lachimia again mandated EAP counseling for Plaintiff after he had an argument with another employee about the paid time off policy.

In 2010, Plaintiff had conversations regarding stories in the media of workplace violence. Lachimia's note on the situation indicates people had reported that Plaintiff said he would not be surprised if he got fired and that it would not matter, "He'd just have to

shoot everyone." Plaintiff mimed shooting around the room. Several of the people that witnessed this incident were students who were part of an affiliation between LVHN and Northampton Community College, including Heather Shuman. The students complained to the college and Lachimia, and the college expressed concern about the program's future to Lachimia. Lachimia suspended Plaintiff and again mandated counseling.

Later in 2010, Plaintiff was preparing a patient room in the presence of student Shuman and clinical instructor Lori Marsh. Marsh stopped Plaintiff in his preparations and told him to let the student do it. In stopping Plaintiff, Marsh touched his wrist; Plaintiff maintains it was a slap hard enough to leave a mark and embarrass him. Plaintiff swore at the student to get out of the room.[1] Just two days later, Plaintiff was again working with student Shuman. They had a disagreement over performance of a "scout film," and "Plaintiff became angry and upset and, in front of the patient, began swearing at Shuman, including using the 'F' word."[2] Shuman left the room and cried, later reporting the incident to Marsh and saying she was very uncomfortable.

Plaintiff had also been written up for abusing his use of sick days. He maintains that a female employee, Maryellen Sandholm, had done the same without discipline. Defendant says Sandholm had been given FMLA leave. On a related note, Plaintiff contends that female employees were given first pick of vacation scheduling. The record reveals that three particular individuals who had been with Defendant prior to LVHN's takeover of Muhlenberg hospital, all female, exercised vacation priority. Those individuals took precedence over the other employees, male and female alike.

---

[1] Plaintiff vaguely denies this, but merely references the full deposition of Marsh and claims it is attached; however, it does not appear of record.

[2] *See* Defendant's Motion for Summary Judgment (Docket #26) at ¶105. Plaintiff strangely denies this statement of fact as a legal conclusion. *See* Plaintiff's Answer to Defendant's Motion for Summary Judgment (Docket #29) at ¶105.

Plaintiff was also disciplined for several mistakes with the actual substance of his duties. Among them were one occasion on which Defendant claims Plaintiff stood a patient up for an exam that should have been done with the patient lying down, and the patient blacked out. Other times, Plaintiff performed the wrong exam. Plaintiff claims at least one of the wrong exams was in reality due to a mistake Sandholm made that he corrected.

The joint investigation of the two final incidents between Plaintiff and student Shuman resulted in Plaintiff's termination. Lachimia's notes on the investigation and her deposition indicate that she decided to terminate Plaintiff because of repeated anger and behavioral problems, the threat he posed to the student program, and the errors he had made with patients.

Plaintiff filed with the EEOC and then the Northampton County Court of Common Pleas. After removal to this Court, Judge Stengel dismissed all claims except sex-based discrimination under Title VII and the PHRA because of a failure to exhaust administrative remedies on the other claims, including claims regarding disability and hostile work environment. Defendant filed for summary judgment on the remaining claims, which the Court will grant for reasons discussed below.

Discussion

Summary judgment is proper if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012). "A dispute is genuine if a reasonable trier-of-fact could find

in favor of the non-movant. A dispute is material if it could affect the outcome of the case." *Lichtenstein*, 691 F.3d at 300 (internal citations omitted).

The analysis for claims of discriminatory discharge is the same under Title VII and the PHRA. *Economos v. Scotts Co.*, CIV A 05-271, 2006 WL 3386646 (E.D. Pa. Nov. 21, 2006) ("The proper analysis under Title VII and the [PHRA] is identical as Pennsylvania courts have construed the two acts interchangeably." (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001))).

"A Title VII plaintiff may state a claim for discrimination under either the pretext theory set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or the mixed-motive theory set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons." *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008).

When a plaintiff proceeds on the pretext theory, the *McDonnell Douglas* burden-shifting framework applies. *Id.* at 214. First, a plaintiff must make out a *prima facie* case showing: 1) he is a member of a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Id.* If a plaintiff makes out such a case, it becomes the defendant's burden to offer a "legitimate, non-discriminatory reason" for the adverse employment action. *Id.* "If the defendant does so, the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Id.*

A plaintiff can meet this re-shouldered burden of showing pretext with evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Under the first approach, evidence to disbelieve the employer's reason requires a plaintiff to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" that a jury could conclude the employer did not really act for non-discriminatory reasons. *Fuentes*, 32 F.3d at 765. Because the factual issue is the employer's motivation rather than whether the decision was sound, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken." *Id.* To effectively undercut the employer's purported legitimate reason, the inconsistencies noted must be significant and actually undermine the logic of the legitimate reason. *See Schroder v. Pleasant Valley Sch. Dist.*, 458 F. App'x 128, 130 (3d Cir. 2012). In Schroder, the plaintiff was a substitute bus aide unhappy that she did not receive more assignments or a permanent position. *Id.* at 129. The employer claimed as its legitimate reason that the plaintiff had proven herself unreliable by not showing up when called. *Id.* A letter from the defendant's superintendent to the plaintiff suggested the plaintiff might be receiving less work because the school district had hired several more bus aides. *Id.* The court concluded that was not a sufficient inconsistency because an increased pool of bus aides would indeed decrease the plaintiff's assignments, especially if she was unreliable. *Id.* at 130.

6

Succeeding under the second approach basically requires the same type of evidence supporting an inference of discrimination that a plaintiff might use to make a *prima facie* case, such as evidence demonstrating more favorable treatment of similarly situated comparators. *See Greenawalt v. Clarion Cnty.*, 459 F. App'x 165, 169 (3d Cir. 2012) (finding that lack of similarity in conduct meant comparators were not evidence of discrimination for the *prima facie* case or to demonstrate pretext); *see also Langley v. Merck & Co., Inc.*, 186 F. App'x 258, 259 (3d Cir. 2006) (including as a way to satisfy the fourth element of the *prima facie* case that a plaintiff may show "similarly-situated non-members of the protected class were treated more favorably").

To show discrimination by way of comparators, "comparator employees must be similarly situated in all relevant respects," the determination of which "takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1645 (U.S. 2012). It is the plaintiff's burden to put forth evidence that potential comparators are indeed similarly situated, and the plaintiff's own unsupported statements regarding the comparators' circumstances will not suffice. *See Warfield v. SEPTA*, 460 F. App'x 127, 130 (3d Cir. 2012). Comparators who committed offenses that were different but of "comparable seriousness" may satisfy the plaintiff's burden. *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)). In assessing comparators, the employer's subjective belief may be more important that the actual, true situation of the comparators. *See Amfosakyi v. Frito Lay, Inc.*, 496 F. App'x 218, 224 (3d Cir. 2012) (finding comparator not similarly situated where employer's investigation

definitively showed the plaintiff had lied but was inconclusive as to the comparator). A potential comparator's situation may not be sufficiently similar where the conduct is similar but the comparator improved over time while the plaintiff did not. *See McDonnaugh v. Teva Specialty Pharm.*, 489 F. App'x 550, 552 (3d Cir. 2012). Likewise, similar conduct is not sufficient if the plaintiff exhibited a pattern of behavior while the comparators exhibited only isolated instances. *See Ridgeway v. Bayhealth Med. Ctr., Inc.*, CV 12-158-LPS-CJB, 2013 WL 5435535 (D. Del. Sept. 30, 2013), *report and recommendation adopted*, CV 12-158-LPS-CJB, 2013 WL 6405731 (D. Del. Dec. 4, 2013). Sometimes the circumstances of a plaintiff's bad conduct, and the differing effect thereof, may warrant treating the plaintiff differently than seemingly similar comparators. *See Greenawalt*, 459 F. App'x at 168-69 (finding that although several jail guards violated the same official policy on relationships with inmates, plaintiff's specific violation created a potential security risk and was therefore not sufficiently similar to the alleged comparators' conduct). Finally, although "identification of one or two comparators may be sufficient at the *prima facie* stage of analysis, it is not sufficient at the pretext phase." *Ray v. Pinnacle Health Hospitals, Inc.*, 416 F. App'x 157, 164 (3d Cir. 2010) (citing Simpson v. Kay Jewelers, 142 F.3d, 639, 645–46 (3d Cir.1998)).

To proceed instead on a mixed-motive theory, "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Makky*, 541 F.3d at 214 (internal quotation marks omitted). The mixed-motive theory appears to be a less taxing standard because a plaintiff need not point to evidence that discounts the employer's proffered legitimate reason entirely. *See*

8

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). The mixed-motive theory used to be distinguishable from and more exacting than the pretext theory because mixed-motive required direct evidence of discrimination, but circumstantial evidence is now acceptable.[3] *See Cange v. Phila. Parking Auth.*, 451 F. App'x 210, 213 (3d Cir. 2011) (recognizing the change wrought by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003)). Some cases maintain that the mixed-motive theory is a "higher bar than the 'pretext' rubric," though these cases seem to derive from authority based on the old direct evidence requirement. *Tavana v. La Salle Univ.*, CIV.A. 06-CV-4376, 2007 WL 4105376, n.1 (E.D. Pa. Nov. 14, 2007); *see also Campetti v. Career Educ. Corp.*, CIV.A. 02-CV-1349, 2003 WL 21961438 (E.D. Pa. June 25, 2003) ("Though it is advantageous for a plaintiff to proceed on a mixed motive theory, the plaintiff has a high initial hurdle to clear. To obtain the benefits under a mixed motive theory, the employee must 'offer stronger evidence ... than that needed to establish a prima facie case under' *McDonnell Douglas*." (quoting *Weston–Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 65 (1st Cir. 2002))). Ultimately, analysis of whether a plaintiff has adduced evidence sufficient for the mixed-motive theory is similar to the analysis under the pretext standard. *See Tolan v. Temple Health Sys. Transp. Team, Inc.*, 13-1916, 2014 WL 594093 (3d Cir. Feb. 18, 2014) (resolving the mixed-motive analysis simply by reference to prior pretext analysis); *see also Cange*, 451 F. App'x at 213-14 (demonstrating that a plaintiff could pursue a mixed-motive theory on the basis of

---

[3] There is some debate as to whether the mixed-motive theory, and the newer rule that circumstantial evidence is sufficient, should be restricted to jury instructions and not available at the summary judgment stage. *See Rouse v. II-VI Inc.*, 08-3922, 2009 WL 1337144 (3d Cir. May 14, 2009). This Court agrees with the District Court in the *Rouse* case, which noted that the summary judgment standard is essentially based on what a reasonable jury could decide and, therefore, applied the mixed-motive standard not requiring direct evidence in its summary judgment analysis. *See Rouse v. II-VI Inc.*, 2:06-CV-566, 2008 WL 2914796 (W.D. Pa. July 24, 2008), *aff'd*, *Rouse*, 3d Cir. opinion, *supra*.

disparate treatment *vis à vis* comparators, although the evidence was insufficient in that case).

As courts often do when the employer defendant has clearly identified a legitimate reason for its action, this Court will assume for purposes of analysis that Plaintiff has made out a *prima facie* case. Defendant's proffer of legitimate reasons for firing Plaintiff—that he was repeatedly unable to control his anger in the workplace, threatened the student affiliation program by directing some of his outbursts at students, and made several errors with patient testing—easily shifts the burden back to Plaintiff to show these reasons are pretextual.

Plaintiff offers two alleged inconsistencies as reasons to disbelieve Defendant's explanation, but neither is sufficient. First, Plaintiff argues Defendant did not fully follow the established progressive discipline policy because he was not on final warning at the time of his termination. That contention is not supported by the record; while there is some disagreement between the policy document and the deposition of Lachimia as to whether the final step before termination has to be a written warning *with* suspension or may be either *separately*, the policy indicates disciplinary action may be initiated at a higher level based on the seriousness of an offense. Plus, Plaintiff was subject to multiple suspensions, so, even treating the disciplinary options as a strict progressive sequence, Plaintiff could have been terminated earlier. Moreover, this is simply not the kind of inconsistency that challenges the credibility of Defendant's proffered reason, because jumping to a higher level of discipline is perfectly consistent with an employer being concerned about an employee's angry outbursts affecting the safety and peace of mind of other employees. Second, Plaintiff notes Defendant has not produced written complaints

from the students about Plaintiff's behavior, but he has not actually denied there were complaints. There is plenty of evidence on the record that there were complaints made and, more importantly, that Lachimia was concerned about student complaints. The employer's motivation is the issue, and no reasonable jury could conclude the failure to present written student complaints constitutes sufficient weakness or contradiction in Defendant's explanation.

Though Plaintiff cannot directly undercut the credibility of Defendant's explanation, he can still attempt to show the usual sort of facts from which a jury could infer that discrimination was the real reason for Defendant's action. Plaintiff offers several possibilities: Marsh, a female, was not mandated counseling when she allegedly slapped him, while Plaintiff was mandated counseling for using profanity; gender issues surrounding the incident regarding the toilet seat sign; three female employees having priority in scheduling vacation; Plaintiff was disciplined for abusing sick leave while a female employee was not; at least one of the "wrong exam" incidents for which Plaintiff was disciplined was really female Sandholm's fault and she was not disciplined; differential discipline of another employee, Catherine Courtney, who displayed comparable unprofessional behavior; and females not being disciplined for using profanity as Plaintiff was. The nature of these issues, along with the similarity of the pretext standard and the mixed-motive standard, allows the Court to consider both standards simultaneously for each issue.

The toilet seat sign incident, at the very most, might contribute to a harassment claim, but there is no harassment claim before the Court. From Plaintiff's own statement, he felt that the sign itself, rather than any related employment action or other act on the

part of supervisors or the employer, "was a gender based form of harassment."[4] There is simply nothing about this incident—an altercation between two employees that happened to involve a gender-related topic—from which one can reasonably infer anything bad about the employer's motives.

The rest of the issues are based on comparator analysis, and none provides valid support to Plaintiff's case. As for the three female employees who exercised vacation priority, Defendant asserts that those three employees were differentiated not by gender, but by the fact that they had worked at the hospital since before the LVHN takeover, and that other employees, male and female alike, were all in same boat as compared to those three individuals. Although Defendant has not actually attached the final deposition page it cites to support Plaintiff's recognition of this situation,[5] Plaintiff does elsewhere admit that it is just his subjective belief that gender was at issue in vacation priority.[6] The fact that other females were behind the three particular individuals in priority just as Plaintiff was and the fact that the three individuals had a specific, different history with the employer than Plaintiff means there can be no valid comparator analysis on this issue.

Regarding the alleged difference in discipline for abuse of sick days, it is Plaintiff's burden to show that a potential comparator was similarly situated. The comparator in question here is Sandholm. While the record before the Court does not absolutely establish that Sandholm's sick leave was pursuant to the FMLA and therefore different from Plaintiff's,[7] Plaintiff failed to follow up on Defendant's discovery

---

[4] Plaintiff's Answer to Defendant's Motion for Summary Judgment (Docket #29) at ¶38.
[5] Defendant cites pp. 433-34 of Plaintiff's deposition, but the exhibit ends at p. 433. *See* Defendant's Reply Memorandum (Docket #31-2) at 4; Defendant's Motion for Summary Judgment at Ex. I (Docket #26-3).
[6] Defendant's Motion for Summary Judgment at Ex. I, p. 378 (Docket #26-3).
[7] For that fact, Defendant cites only its Answer (Docket #23) and a transcript page on which the fact appears in a *question* to Plaintiff, and Plaintiff merely answers that he was not aware of Sandholm's FMLA status. *See* Defendant's Motion for Summary Judgment at Ex. I, p. 83 (Docket #26-3).

12

objections and, therefore, has not provided employment records for Sandholm. Even if the Court cannot accept as a fact on summary judgment that Sandholm had approved FMLA leave, Plaintiff has not provided the facts necessary to consider Sandholm similarly situated. The same reasoning applies to Plaintiff's claim that Sandholm was responsible for at least one of the incidents in which Plaintiff was disciplined for performing the wrong exam. Further, even assuming Sandholm was truly to blame, the fact that Plaintiff was blamed cannot elucidate Defendant's subjective motivation if Lachimia was not aware that Sandholm was responsible.

Turning to Plaintiff's argument that Defendant did not mandate counseling for Marsh after their altercation, the Court must view the facts in light favorable to Plaintiff and assume Marsh actually slapped him rather than Defendant's more mild characterization. In the abstract, slapping might well qualify as an offense of comparable (or greater) seriousness to Plaintiff's verbal outburst. But there are several problems with the comparator analysis here, too. Although Marsh seems to have reported to the same supervisor (Lachimia), she and Plaintiff did not have the same position and duties: Plaintiff was a radiologic technologist, and Marsh was a clinical instructor for the student program. Marsh did not have Plaintiff's history of anger issues and verbal outbursts. And Marsh's conduct was not directed at a student. The fact that Plaintiff's behavior repeatedly upset students and caused difficulty for the hospital's relationship with the student program warrants a different and stricter disciplinary response to his conduct. Altogether, there is no basis for a proper comparison with Marsh or her behavior.

As for potential comparison to Courtney, even assuming her behavior was indeed comparable to Plaintiff's, there is again insufficient evidence to demonstrate her

similarity to Plaintiff. The main thing we know about Courtney is a difference; namely, that her behavior improved after the initial reprimand, while Plaintiff continued to exhibit troubling conduct and was fired as a result of more than any one incident.

Lastly, there is Plaintiff's contention that female employees, specifically Schuch, used profanity without being disciplined. The record is clear that profanity was only one aspect of the conduct for which Defendant repeatedly disciplined Plaintiff. His use of profanity occurred in angry rants that were sometimes directed at particular people and also, on multiple occasions, referenced violence. As for Schuch specifically, she had no history of bad language and apologized to Lachimia for the use of profanity.

Plaintiff has worked up a messy list of what appear at first glance to be at least potentially disputed material facts, and the Court is cognizant of the jury's role in sorting out such issues. But as a matter of law, nothing Plaintiff lists could provide a jury any basis on which to discredit the employer's legitimate reasons for terminating him or otherwise infer that sex discrimination played any role in his termination; therefore, a grant of summary judgment in favor of Defendant is appropriate.